UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| CHRISTOPHER A. CURTIS and CHRISTINA CURTIS, )<br>)<br>)<br>Plaintiffs, )<br>)<br>and )<br>)<br>HUMANA HEALTH PLAN, INC., )<br>)<br>Intervening Plaintiff, )<br>)<br>v. )<br>)<br>COAST TO COAST HEALTHCARE )<br>SERVICES, INC. and RICHARD )<br>PRETORIUS, M.D., )<br>)<br>Defendants. ) | Civil No. 3:15-cv-070-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Defendant Coast to Coast Health Care Services' (hereinafter referred to as "Coast to Coast") Motion for Summary Judgment. [R. 48.] Coast to Coast requests that the Court enter Summary Judgment with prejudice, pursuant to FRCP 56, in their favor on all claims brought against them by the plaintiffs. After an extensive review of the record and applicable case law, Defendant Coast to Coast's Motion for Summary Judgment [R. 48] is GRANTED.

**I**

In the instant action, Plaintiffs brought allegations against Defendant Richard Pretorius, M.D. for medical negligence and Coast to Coast under a theory of *respondeat superior*. [R. 1-1 at 4.] This suit is properly before this court pursuant to the court's diversity jurisdiction.

Plaintiffs Christopher A. Curtis and Christina Curtis are residents of Owenton, Kentucky. [*Id.* at 2 ¶1-2.] Defendant Coast to Coast is incorporated in Ohio with its principle place of business in New Albany, Ohio. [*Id.* ¶3-4.] Defendant Pretorius is a resident of New York. [*Id.* ¶5.] Although no estimate was provided in the initial complaint or any subsequent document, the amount in controversy will almost certainly exceed $75,000. [R. 1 at 3, ¶2.] None of the parties suggest that this court lacks personal or subject matter jurisdiction.

On October 1, 2013, Defendant Coast to Coast, a health care staffing service, entered into a contractual agreement with New Horizons Medical Center to provide staffing, including doctors such as Defendant Pretorius, to service New Horizon's Owenton, Kentucky, medical facility. [R. 41-1.] Coast to Coast entered into a contract with Dr. Pretorius on February 18, 2014, for Dr. Pretorius to practice medicine and subsequently assigned him to the New Horizons Medical Center in Owenton. [*Id.*] On September 12, 2014, Plaintiff Christopher A. Curtis visited the New Horizons Medical Center emergency room complaining of an abscess in his right buttocks. [*Id.* at 2; R. 1-1 at 4 ¶14-15.] Dr. Pretorius performed a medical evaluation and treated Mr. Curtis by means of an incision, abscess drain, and packing of the wound. [R. 48-1 at 2; R. 1-1 at 4 ¶16.] Plaintiff was advised to return to New Horizons within two days if his conditions showed signs of worsening. [R. 48-1 at 2.]

On September 14, 2014, having waited two days while still suffering from his condition, Plaintiff returned to New Horizons, where he was seen by Dr. Betty Mitchell. [*Id.*] Following a medical evaluation, Mr. Curtis was admitted to the hospital and was given an antibiotic IV treatment. [*Id.*; R. 1-1 at 5 ¶21.] The next day, Dr. Robert Hicks performed an additional evaluation and suspected that Mr. Curtis had developed Fournier's Gangrene. [R. 48-1 at 2.]

Mr. Curtis was subsequently transferred to St. Elizabeth Medical Center, where Dr. Michael K. Davenport diagnosed Plaintiff with Fournier's Gangrene and performed surgical procedures to further treat the affected area. [*Id.*; R. 1-1 at 5 ¶23-25.]

On September 1, 2015, Plaintiffs filed a complaint against Defendants in the Owen County Circuit Court in the Commonwealth of Kentucky alleging negligent treatment and care provided by Defendant Pretorius and vicarious liability for said treatment and care against Defendant Coast to Coast. [R. 1.] The case was subsequently removed to this Court on the grounds of diversity jurisdiction. [*Id.*] On September 7, 2016, Humana Health Plan, Inc. joined the suit as a plaintiff by means of an Intervening Complaint. [R. 48-1 at 3.]

Defendant Coast to Coast filed a Motion for Summary Judgment, pursuant to FRCP 56 requesting that the Court find that Defendant Pretorius is an independent contractor and not an employee, thus Coast to Coast cannot be held liable under the *respondeat superior* theory espoused by Plaintiffs. [R. 48.] In response, Plaintiffs argue that Defendant Pretorius' employment status is a genuine issue of material fact in dispute and ask the Court to deny Defendant Coast to Coast's Motion for Summary Judgment. [R. 55 at 2, 15.] Now, the Court must determine whether there is a genuine issue of material fact in dispute and, if not, whether the Defendant is entitled to summary judgment.

## II

### A

When sitting in diversity, a federal court applies the substantive law of the state in which it sits. *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). However, when considering

summary judgment arguments, a federal court applies the standards of Federal Rule of Civil Procedure 56 rather than Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr. Inc.*, 807 S.W.2d 476 (Ky. 1991). *See Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993). Under Rule 56, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 255). The Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

**B**

Defendant Coast to Coast asserts that they cannot be held vicariously liable for the actions of Defendant Pretorius as the contractual language clearly defines Dr. Pretorius as an independent contractor. [*See* R. 48.] Plaintiffs, however, argue that the contract establishing the relationship between Defendant Coast to Coast and Defendant Pretorius is not determinative and there is a genuine issue of material fact as to whether Dr. Pretorius was an employee of Coast to Coast Healthcare Services, Inc. [R. 55 at 13.] As both sides cite extensively to the contract language, an in-depth review of the contract and circumstantial evidence is necessary to resolve this issue.

*Respondeat superior*, or vicarious liability, is a doctrine that holds an employer responsible for the wrongful actions of one of their employees or agents in certain circumstances. *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005). Actions of independent contractors, however, generally do not impart liability on their employers. *Foncannon v. Southeastern Emergency Physicians, LLC*, 2017 WL 1362029, *3 (E.D. KY 2017) (citing *Miles Farm Supply v. Ellis*, 878 S.W.2d 803, 804 (Ky. Ct. App. 1994)). The parties stipulate that the factors test espoused in *Sam Horne Motor & Implement Co. v. Gregg*, 279 S.W.2d 755, 756–57 (Ky. 1955) is controlling; however, a more recent decision by the Kentucky Supreme Court added an additional factor to the analysis. In Kentucky, the determination of whether a person is an independent contractor or an employee is accomplished through a ten factor test:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work; (b) whether or not the one employed is engaged in a distinct occupation or business; (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employer or the workman supplies the

> instrumentalities, tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether or not the work is a part of the regular business of the employer; (i) whether or not the parties believe they are creating the relationship of master and servant; and (j) whether the principal is or is not in business.

*Ky. Unemp. Ins. Comm'n v. Landmark Cmty. Newspapers of Ky., Inc.*, 91 S.W.3d 575, 579 (Ky. 2002) (quoting Restatement (Second) of Agency, § 220(2) (1958)). While the factor of control has traditionally been the most important consideration for courts in deciding employment status, *Ky. Unemp. Ins. Comm'n* held that control is not "of greater importance than the others" and thus "each case must be decided on its own particular facts." 91 S.W.3d at 580 (quoting *Locust Coal Co. v. Bennett*, 325 S.W.2d 322, 324 (1959)). The following weighing of the factors, including the contractual language and the circumstantial evidence, demonstrates that summary judgment for the defendant is appropriate in this instance.

### C

### 1

In Kentucky, the factor of control has traditionally been most informative when determining whether a person is an independent contractor or an employee. The extent of control over an independent contractor is defined as the rendering of services which "represents the will of the employer only as to the result of his work and not as to the means by which it is accomplished." *City of Winchester v. King*, S.W.2d 343, 345 (Ky. 1954)[1]; *see also Nazar v. Braham*, 291 S.W.3d 599, 607 (Ky. 2009)(holding that "[i]f . . . an individual is free to determine how work is done and the principal cares only about the end result, then that individual is an independent contractor.") In contrast, one who is considered an employee or agent submits

---

[1] Until 1976, the Court of Appeals of Kentucky was the highest court in the Kentucky state judiciary.

6

themselves to an employer's "power or responsibility to control the method, manner, and details of the agent's work." *Nazar*, 291 S.W.3d at 606-07.

The parties primarily disagree over the degree of control exercised by Coast to Coast over Dr. Pretorius. Plaintiffs rely on the contractual language and surrounding circumstances of the relationship between Coast to Coast and New Horizons to argue that Coast to Coast retained ultimate control over Dr. Pretorius' actions. Unsurprisingly, Coast to Coast points to other provisions of the contract to suggest that, despite the fact that they had some limited oversight of Dr. Pretorius' medical care, they had no direct control over Dr. Pretorius' day-to-day activities. Specifically, Plaintiffs cite to contract language such as "he/she will personally evaluate all emergency department patients in <u>less than 30 minutes</u> from the time Provider is notified by Client of the need to see a particular patient" and Paragraph 9 ("Removal") to underscore the extent of control Coast to Coast wielded. [*Id.* at 4-5 (citing 48-2 at 3-4).] While the timing requirement may appear to place some semblance of control of the schedule that Dr. Pretorius must keep, it does not specify the manner in which Dr. Pretorius must behave once he begins the diagnosis and treatment of patients. Based on the preceding sentence of the clause that Plaintiffs cite for the "<u>less than 30 minutes</u>" requirement, the contract clarifies that healthcare facilities are "required by the Centers for Medicare and Medicaid (CMS) to provide emergency medical care in a timely manner." [R. 48-2 at 3.] Thus, the establishment of a specific response time would be an appropriate measure to ensure compliance with regulations as opposed to direct control over Dr. Pretorius' behavior.

Paragraph 9 ("Removal") of the contract between Coast to Coast and Dr. Pretorius spells out how complaints, discipline, and removal of a Provider will be handled. [R. 48-2 at 4.] The

language stipulates that a Client [New Horizons] must "provide to Company [Coast to Coast] immediate written notice" when there is a complaint about a Provider's work and that Coast to Coast will investigate the Provider's actions through a "peer review committee." [*Id.*] However, for there to be disciplinary action taken, Coast to Coast and the Client must "concur there is a bona fide concern that patient or staff harm may occur if Provider remains on site." [*Id.*] Plaintiffs also cite the relationship between Coast to Coast and New Horizons, wherein Coast to Coast allegedly threatened to terminate their supply of medical staff when New Horizons requested Dr. Pretorius' reassignment or termination. [R. 55 at 6-11.] While it does appear that Coast to Coast exercised a large amount of control over the discipline and termination of Dr. Pretorius, it does not enjoy "unilateral" control, as Plaintiffs' argue. [*See id.* at 5.] Coast to Coast and New Horizons held dual power to "investigate the validity of the complaint by means of appropriate mechanisms and then arrive at a resolution of the complaint that is mutually acceptable to both Client and Company." [*Id.* at 4.] This dual responsibility existed for review of "the performance of Provider," "professional incompetence or personal misconduct," and "lesser concerns or complaints." [R. 48-2 at 4.]

The issue of control is not solely based upon disciplinary review, but also includes "power or responsibility to control the method, manner, and details of the agent's work." *Nazar*, 291 S.W.3d at 606-07. Plaintiffs point to no evidence, outside of the thirty minute emergency room response time, that Coast to Coast attempted to control the actual day-to-day activities of Defendant Pretorius. The contract itself states that "Company shall not provide any clinical training, clinical instruction, or any other directives of any kind that direct the manner in which Provider is to perform said services." [R. 48-2 at 2.] The contract also stipulates that, though

"Company shall have control with regard to the time and place in which Provider performs such services", the "selection of hours or days the Provider will be available to perform services with be at the sole discretion of the Provider." [*Id.*] Thus, it appears that Coast to Coast provided little, if any, direction to Dr. Pretorius' provision of medical care. Since Coast to Coast had little to no discretion to control the daily care provided by Dr. Pretorius, with the exception of establishing his working hours and location and ad hoc review of alleged misconduct, the control factor of this multi-factor test strongly indicates the existence of an independent contractor status.

### 2

The second factor in Kentucky's test for agency requires an examination of whether a person is "engaged in a distinct occupation or business." *Ky. Unemp. Ins. Comm'n*, 91 S.W.3d at 579. This factor asks whether a person has their own independent business, thus has multiple clients, or is performing work for an individual entity. *See Sam Horne*, 279 S.W.2d at 757. Another court in the Eastern District of Kentucky has interpreted this factor to include contemplation of the degree of skill required for, and complexity of, the individual's occupation. *See Foncannon v. Se. Emergency Physicians, LLC*, 2017 WL 1362029, at *3 (E.D. Ky. Apr. 11, 2017).

The provider independent contractor agreement between Dr. Pretorius and Coast to Coast clearly allows Dr. Pretorius to seek gainful opportunities separate from his placement on Coast to Coasts' behalf. A clause, titled "Other Services", indicates that "[s]ubject to the limitations set forth in Paragraph 12, during the term of this Agreement Provider shall be able to perform other medical and professional services for whomsoever Provider desires, and Company warrants that

it will not interfere in such activity of Provider." [R. 48-2 at 4.] The "Paragraph 12" language that sets the limitations in the "Other Services" simply mandates that a Provider is not to seek out agreements with direct competitors of Coast to Coast and also acts as a non-compete clause. [*Id.* at 4-6.] Dr. Pretorius was engaged in a distinct occupation and provided highly skilled medical care as an emergency room physician and hospitalist. [R. 48-1 at 1.] Although there is nothing in the record to indicate that Dr. Pretorius sought out other opportunities during the term of his contract with Coast to Coast, the language of the contract is persuasive in weighing the distinct occupation or business factor in favor of an independent contractor status.

### 3

Similar to the control factor, Kentucky Courts asks whether "the work is usually done under the direction of the employer or by a specialist without supervision." *Ky. Unemp. Ins. Comm'n*, 91 S.W.3d at 579. Specialists are recognized as individuals that have "unusual training or skill." *Sam Horne*, 279 S.W.2d at 757. The work of a specialist is generally judged upon completion whereas laborers engaged in more tedious activities would likely be supervised by the employer or master during the operative stage. *See* 91 S.W.3d at 579.

The parties do not dispute that Dr. Pretorius is a specialist. It is evident to the Court that a medical doctor, regardless of their focus or specialty, has acquired knowledge and experience far beyond that of a layperson. As for the oversight exercised by Coast to Coast, the contract states that "Company shall not provide any clinical training, clinical instruction, or any other directives of any kind that direct the manner in which Provider is to perform said services." [R. 48-2 at 2.] Coast to Coast appears to have provided minimal management of Dr. Pretorius' day-to-day affairs and he was significantly free to utilize his special knowledge and training. As such, the

specialty factor weighs in favor of finding the existence of an independent contractor relationship.

**4**

Closely associated to the preceding discussion, is the factor that asks whether "skill [is] required in the particular occupation." *Kentucky Unemployment Ins. Comm'n v. Landmark Cmty. Newspapers of Kentucky, Inc.*, 91 S.W.3d 575, 579 (Ky. 2002). Kentucky courts place some emphasis on the distinction between one who has a skill that has to be learned and practiced, thereby indicating an independent contractor status, and a task that can be performed without significant training or experience, indicating an employer/employee relationship. *See Sam Horne*, 279 S.W.2d at 757; *see also Ky. Unemp. Ins. Comm'n*, 91 S.W.3d at 580.

The parties do not dispute that Dr. Pretorius' position required skills well beyond that of an untrained or inexperienced layperson. In fact, the contract specifically requires that Dr. Pretorius be "licensed to practice medicine in any and all states in which he or she chooses to work," is "experienced and competent in the operation and use of medical care facilities and procedures," and is "qualified to render the professional services required of a physician." [R. 48-2 at 1.] Due to the level of skill necessary to perform highly individualized patient care, it would be difficult for Coast to Coast to monitor and dictate the manner in which Dr. Pretorius practiced medicine on a daily basis. Ultimately, Dr. Pretorius was given the conclusive authority (and duty as the treating physician) to diagnose and treat his patients and his work would only be subject to post hoc review for malpractice. [*See id.* at 4.] Since a high level of skill is needed to practice as a physician and they are not generally subject to direct supervision, this factor weighs significantly in favor of finding an independent contractor status.

**5**

A strong indicator of a master/servant or employee/employer relationship is whether the necessary instrumentalities, tools, and place of work are provided. *Sam Horne*, 279 S.W.2d at 757. By providing the necessary equipment and location, a master or employer would theoretically exercise more control over both the means and outcome of the laborer's work, whereas one who supplies their own tools would exercise more independence and may not need additional instruction regarding instrument use. *Id.*; *see also* Restatement (Second) of Agency, § 220 cmt. k (1958).

When applied to the circumstances of this case, the analysis concerning supply of instrumentalities draws an inconclusive result. On the one hand, Coast to Coast did not directly control the tools or places that Dr. Pretorius used; the devices and hospital were owned and operated by New Horizons, the client. [R. 48-1 at 7.] But, Coast to Coast did provide Dr. Pretorius with services such as billing, job placement, and scheduling. [R. 48-2 at 2; R. 55 at 4-5.] Another benefit that can be construed as a tool or instrumentality is Coast to Coast's provision of malpractice insurance to Dr. Pretorius. [R. 48-2 at 3.] Since there are strong indicators for both an employee status and an independent contractor status, the supply factor analysis does not weigh in favor of either interpretation.

**6**

The length a person is contracted to perform work is another indicator of the relationship between a master and servant. Generally, an independent contractor is more likely to be contracted for a shorter, more distinct duration than a regular employee. *See* Restatement (Second) of Agency, § 220 cmt. j (1958). The parties do not dispute Defendant's length of

employment but, as discussed in the control factor, Plaintiffs contest that Defendant was an employee of Coast to Coast because of the Defendant's dual responsibility with New Horizons in reviewing Dr. Pretorius quality of service and continued employment. Nevertheless, the contract between Dr. Pretorius and Coast to Coast states that the term ran for a period of one year from the signing date and would be automatically renewed unless terminated by either Coast to Coast or Dr. Pretorius. [R. 48-2 at 1.] Either party could submit a written notice that indicated the intent to discontinue the contract at any time, with or without cause. [*Id.* at 1, 8.] Since the term indicated in the contract was defined for a set date with an automatic renewal as opposed to a job-by-job basis and either party could terminate the contract at-will, the length of employment factor suggests that an employee/employer relationship existed.

### 7

The means of determining pricing and the regularity of payment factor into the employment relationship analysis. Generally, one who is paid per task would more likely be considered an independent contractor, whereas a worker that was paid a salary or hourly rate would predictably be considered an employee. *See Sam Horne*, 279 S.W.2d at 757; *see also* Restatement (Second) of Agency, § 220 cmt. j (1958). Based upon a review of the record, it would appear as though Coast to Coast handled the billing for and payment of Dr. Pretorius throughout his tenure at New Horizons. The contract specifically addresses this fee structure:

> 8. Charging for Fees. The Client for whom Provider is providing services shall be entitled to charge for and receive all fees generated by Provider. If requested by Company, Provider shall execute and deliver to Company and/or Client assignments of his or her rights to receive payment for locum tenens services so that Client may bill on behalf of Provider using Q6 Modifier.

[R. 48-2 at 3-4.]

However, in this case, Plaintiffs provided evidence that Coast to Coast handled the billing of medical services provided by Dr. Pretorius and other medical staff. [R. 55 at 4-5.] Additionally, the contract stipulates that "[i]n exchange for Provider [Dr. Pretorius] providing in a timely manner the services as described in the Placement Confirmation Email, Company agrees to pay Provider for the provision of said services the amount calculated in the manner and at the rate(s) as set forth in the Confirmation Letter sent for each individual shift." [R. 48-2 at 2.] Since the billing for services and actual payment to Dr. Pretorius were handled by Coast to Coast, the factor for method of payment weighs in favor of an employee/employer relationship.

**8**

Next, the Court must consider the regular business of the employer. If a person is hired to perform a job that is within the same industry in which the employer operates and the person is in a subservient role, then they are more likely to be considered an employee. *Sam Horne*, 279 S.W.2d at 757. The parties agree, Coast to Coast regularly contracts with medical providers such as Dr. Pretorius to provide their services to hospitals. It is clear from both the record and the provider independent contractor agreement that Coast to Coast acted as an entity that "engages in the business of contracting with medical care facilities . . . to provide locum tenens medical staffing and services at the facilities operated by the Clients." [R. 48-2 at 1.] Since these agreements are within Coast to Coast's regular course of business, this factor weighs in favor of finding an employee/employer relationship.

Besides the issue of control, Kentucky courts often emphasize the intent of the parties in establishing their relationship as a significant factor for consideration. This determination requires examination of the contractual language used when the relationship was struck and analysis of extrinsic factors such as the surrounding circumstances, actions taken once the contract was in operation, and customs of the relevant industry. *See Sam Horne*, 279 S.W.2d at 758; *see also Ky. Unemp. Ins. Comm'n*, 91 S.W.3d at 581 and Restatement (Second) of Agency, § 220 cmt. i, m (1958). The relationship between Coast to Coast and Dr. Pretorius was explicitly established in the contract, which was titled "PROVIDER INDEPENDENT CONTRACTOR AGREEMENT." [R.48-2 at 1.] Furthermore, in three separate paragraphs, the contract specifically refers to the signatory agreeing to become a Provider that would be considered an independent contractor. [R.48-2 at 1, 4.] Coast to Coast sets out their business goal as a company that "provides staffing and servicing by contracting with individual Providers, as independent contractors, who agree to make their professional services available…" [*Id.* at 1.] Two paragraphs later, Dr. Pretorius states his goal as being "desirous of contracting with Company to provide his or her services as an independent contractor…" [*Id.*] The contract then contains a separate clause that makes clear any ambiguity regarding the relationship established by the contracting parties:

> 10. <u>Independent Contractor Status</u>. The parties hereto mutually acknowledge that Provider is an independent contractor of Company and not its employee, agent, or servant. Provider acknowledges that he or she is not entitled to be provided any employee benefits whatsoever, either by Company or by the Client for whom Provider is providing services. Provider agrees that, as an independent contractor, he or she is fully and completely responsible for payment of all self-employment taxes, as well as income and social security taxes and any other required taxes.

[*Id.* at 4.]

Plaintiffs argue that the contract contains phrasing that contradicts and prevents establishment of an independent contractor relationship. Specifically, Plaintiffs point to the language in paragraph 12(c)(iv) that contains such phrasing as "[d]uring his period of employment" and "following his or her termination of employment" as proof that the contract is inconsistent in regards to the relationship status of the parties. Thus, Plaintiff believes there is a credible question as to intent and a genuine issue of material fact in dispute. [R. 55 (citing to 48-2, ¶12(c)(iv).] While using the words "employment" and "termination" can serve as indicators demonstrating an employer / employee relationship, the use of these words, in this independent contractor agreement, taken as a whole, appear to be succinct descriptors for the period of time in which Dr. Pretorius would provide services for Coast to Coast and not legally significant phrases suggesting that Dr. Pretorius and Coast to Coast wished to engage in a master and servant relationship. Plaintiffs fails to raise additional arguments or circumstances that challenge the parties' otherwise unambiguously stated intent. Accordingly, the intent of the parties, as determined from the agreement itself and the surrounding circumstances, support a finding that Dr. Pretorius was an independent contractor.

**10**

The Kentucky Supreme Court added one additional factor to this analysis that examines whether the principal is still in business. *Ky. Unemp. Ins. Comm'n* decision, 91 S.W.3d at 580. While the Kentucky Supreme Court did not provide extensive analysis of this factor, a common reading would suggest that courts examine whether the employer or principal's business is still operating, and if so, the relationship was more likely the product of an independent contract. *See*

*Id.*; *see also* Restatement (Second) of Agency, § 220(2) (1958).  Nothing in the record indicates that Coast to Coast has become insolvent or that Dr. Pretorius' contract was void.  Even though significant analysis by Kentucky Courts is lacking, this factor has been considered by this Court and suggests that there was an independent contractor relationship.

## III

While length of employment, payment scheme, and the regular nature of the parent business suggest Dr. Pretorius is an employee, these factors are not as persuasive as the strong findings on the issues of control, skill, specialty and intent.  After a careful weighing of the evidence in the record, filings, relevant precedent, and multiple factors, the Court finds that there is no genuine issue of material fact and that Coast to Coast and Dr. Pretorius enjoyed an independent contractor relationship.  Having made the determination that, as a matter of law, Dr. Pretorius is an independent contractor, Coast to Coast cannot be held vicariously liable under Kentucky law for the allegedly negligent care provided to Plaintiff Christopher A. Curtis.  Accordingly, for the reasons stated above and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Coast to Coast Health Care Services' Motion for Summary Judgment [**R. 48**] is **GRANTED**;

2. Plaintiffs' claims are dismissed, with prejudice, as to Defendant Coast to Coast Healthcare Services, Inc.; and

3. The instant action remains set for final pretrial conference on August 29, 2017, and trial on September 11, 2017, as to Defendant Richard Pretorius, M.D.

17

This the 11th day of August, 2017.

Gregory F. Van Tatenhove
United States District Judge